**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

SARDAR AKBARI,

Petitioner,

v. No. 1:26-cv-03573-KG-GBW

MARKWAYNE MULLIN, *Secretary of the U.S. Department of Homeland Security; et al.*;

Respondents.

**ORDER GRANTING PETITIONER'S RENEWED**
**EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER**

This matter is before the Court on Petitioner Sardar Akbari's Renewed Opposed Emergency Motion for Temporary Restraining Order and Order to Enforce ("Second TRO Motion."). Doc. 16. Respondents filed a response to the Second TRO Motion on November 1, 2026, Doc. 17, and Petitioner filed his reply the same day, Doc. 18. The Court ordered an emergency hearing on November 2, 2026. Having reviewed the briefing, heard the arguments of counsel, and otherwise being fully advised, the Court grants in part and denies in part the Second TRO Motion.

***I. Background***

Petitioner is an Afghan national who has been in federal immigration authorities' custody since approximately December 28, 2024. Doc. 1 at 3, 4. On March 24, 2026, an immigration judge ("IJ") ordered Petitioner removed to Afghanistan. *Id.* at 5. Petitioner's order of removal became administratively final on April 23, 2026. *Id.* On October 23, 2026, Petitioner filed a Petition for a Writ of Habeas Corpus seeking release from custody on the grounds that he had "been detained beyond the six (6) month *Zadvydas* period." *Id.* at 10.

On October 27, 2026, Petitioner's counsel received a call from the Torrance Country Detention Facility informing counsel that Petitioner had been transferred out of the detention facility. Doc. 6 at 1. Petitioner filed his first Emergency Motion for Temporary Restraining Order ("First TRO Motion") arguing that Respondents were violating statutory and regulatory requirements necessary for third-country removal, the Fifth Amendment Due Process Clause, and this Court's October 26, 2026, Order, Doc. 5, which enjoins the Respondents from transferring Petitioner outside the District of New Mexico. Doc. 7 at 5–10. The Court denied Petitioner's First TRO Motion because it lacked subject matter jurisdiction under 8 U.S.C. § 1252 and binding Tenth Circuit precedent. Doc. 11.

On October 31, 2026, Petitioner filed his Second TRO Motion. Doc. 16. In the Second TRO Motion, Petitioner argues new factual circumstances have arisen since the First TRO Motion. Petitioner claims it is likely he will be removed to Pakistan not Afghanistan or he will be handed over to Pakistani authorities to facilitate his removal to Afghanistan.[1] Petitioner also provides an affidavit stating he is at risk of committing suicide. When the Second TRO Motion was filed, Petitioner's removal was anticipated to take place on November 3, 2026. *Id.*

Petitioner makes two arguments in the Second TRO Motion. First, that the Court should reconsider its prior order dismissing the First TRO Motion for lack of subject matter jurisdiction based on the Tenth Circuit's recent opinion in *Abedi v. Carter*. Doc. 16 at 4 (citing *Abedi v. Carter* ___ F.4th ___, 2026 WL 3149141 (10th Cir. Oct. 21, 2026)). Second, it argues that Petitioner's increased risk of committing suicide and Respondent's inability to provide adequate

[1] During the November 2, 2026 hearing, Respondents could not confirm whether Petitioner would be transported directly to Afghanistan or to a third-party country. Uncertified Draft Transcript of Nov. 2, 2026, Hearing ("Draft Tr.") at 24:15–26:7.

safeguards to prevent the suicide while effectuating removal are a violation of Petitioner's substantive due process rights. Doc. 16 at 19–22.

## *II. Legal Standard*

In order to prevail on a request for a temporary restraining order Petitioner must demonstrate (1) irreparable harm if the injunction is not granted; (2) a substantial likelihood that he will prevail on the merits; (3) that the threatened injury to Petitioner outweighs possible harm to the opposing party if the injunction is granted; and (4) that the injunction would not be contrary to the public interest. *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1139 n.2 (10th Cir. 2017) (citing *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1224 (10th Cir. 2009)) "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418 (2009).

## *III. Discussion*

For the reasons set forth below, the Court is not persuaded that the Tenth Circuit's guidance in *Abedi* applies to Petitioner's claims regarding third-country removal. The Court, however, concludes that it has subject matter jurisdiction, under *Abedi*, to address Petitioner's substantive due process challenge concerning whether safeguards are in place during Petitioner's removal from the United States. Having considered the limited evidence presented by counsel, the Court will grant the Second TRO Motion on this narrow ground and temporarily pause Petitioner's removal.

### A. The Court Lacks Jurisdiction to Review Petitioner's Final Order of Removal

Petitioner asserts that "[t]he Court is not deprived of jurisdiction by any provision of 8 U.S.C. § 1252." Doc. 16. The text of § 1252 and binding precedent command the opposite result. The Court in its Order on Petitioner's First TRO Motion cited Tenth Circuit precedent and

the text of § 1252, both of which plainly preclude this Court from reviewing final orders of removal either directly or indirectly. Doc. 11 at 2–4.

Petitioner asks the Court to reconsider its ruling based on the Tenth Circuit's recent decision in *Abedi*, 2026 WL 3149141, at *1–2. Petitioner argues that following *Abedi*, the Court can reach Petitioner's procedural due process arguments regarding deportation to a third country. Doc. 16 at 4. Petitioner did not cite *Abedi* in its First TRO Motion. *See* Doc. 7. Regardless, *Abedi* is inapplicable to Petitioner's third-country deportation arguments.

Petitioner argues that he faces an imminent prospect of removal to a third country. He argues the Government is unlikely to directly deport him to Afghanistan, and instead will take him to Pakistan, hand him over to Pakistani authorities who will then eventually transfer him to Afghanistan. Doc. 16 at 16–18. Petitioner bases these arguments on recent news reports and an affidavit from an ICE officer in another matter. Doc. 16 at 13–15. Petitioner argues that removing him to a third country "not identified on his removal order" without additional due process is a violation of his right to procedural due process. *Id.* at 6–7. On these grounds, Petitioner requests this Court to intervene while the Government is actively deporting him. The Court is not persuaded that it has jurisdiction under *Abedi* to intervene in these circumstances.

In *Abedi*, Immigration and Customs Enforcement ("ICE") told Mr. Abedi that he was going to be deported despite an IJ's order deferring removal under the Convention Against Torture ("CAT"). *Abedi*, 2026 WL 3149141 at *1–2. While in detention, Mr. Abedi was allegedly given a notice that stated his removal to another country was a possibility and that he would be given an informal interview to respond to the reasons for his revocation. *Id.* at *2. Mr. Abedi filed a petition for a writ of habeas corpus and motion for a preliminary injunction arguing that the government was violating its own regulations and his due process rights by revoking his

release without notice or an opportunity to be heard. *Id*. He also argued that under *Zadvyadas v. Davis*, 533 U.S. 678 (2001), that his detention "lacked a reasonable relationship to any legitimate purpose." *Id.* The district court dismissed Mr. Abedi's original claim under *Zadvyadas* because he was within the presumptively reasonable six-month period and denied his request for a preliminary injunction. Mr. Abedi was later released, on a second petition, because his detention exceeded the presumptively reasonable six-month period. *Id.*

On appeal, the Tenth Circuit reversed the district court, holding that it had applied an incorrect burden under the All Writs Act. *Id.* at *13. The Court addressed its holding in *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266 (10th Cir. 2018), stating "§ 1252 is not implicated by a request for a temporary injunction to stay a detainee's removal" when the habeas petition is directed at "the legality of detention" and does not challenge "the underlying removal order." *Id.* The Tenth Circuit clarified that under *Gonzalez-Alarcon*, district courts are not precluded from considering all issues related to a removal other, rather they are only precluded from considering "issues that either directly or indirectly challenge the merits of a removal order." *Id.* The Tenth Circuit concluded the district court could issue an injunction because Mr. Abedi's "claims are grounded in 'some inherent problem with the detention itself,' not in the removal order." *Id.* (quoting *Gonzalez-Alcaron*, 884 F.3d at 1275).

Here, Petitioner argues that removing him to a third country "not identified on his removal order" is a violation of his right to procedural due process. Doc. 16 at 6–7. In support of this argument, Petitioner cites to 8 C.F.R. § 1240.12(d) which states that when a "noncitizen is ordered removed" the IJ "shall identify a country, or countries in the alternative, to which the alien's removal may in the first instance be made." Section 1240.12(d) goes on to state that the

order of the IJ does not limit the Government's authority to deport to "any other country as permitted by section 241(b) of the Act."

Based on Tenth Circuit precedent and text of § 1252, this court is not persuaded that it has jurisdiction to review whether the Government is acting in accordance with the immigration judge's order or § 1240.12(d). In *Ferry v. Gonzales*, the Tenth Circuit held a district court lacked jurisdiction to consider whether immigration officials violated a petitioner's due process and statutory rights in regards to an order of removal issued without a hearing on an adjustment of status application. 457 F.3d 1117, 1125, 1131 (10th Cir. 2006). Similarly, Petitioner asks this Court to determine whether the Government is acting in accordance with its own regulations and the IJ's order of removal. This determination would reach the merits of that order of removal. The Tenth Circuit's decision in *Abedi* does not change this analysis. Petitioner's argument that the Government is not adhering to the removal order or its own regulations is not an argument directed at the legality of Petitioner's detention—it is an argument which indirectly challenges the order of removal. *Abedi* is inapplicable. As a result, this Court lacks subject matter jurisdiction to consider this argument.

### B. The Government Must Ensure Adequate Safeguards to Petitioner's Health While Executing its Final Order of Remvoal

Petitioner also requests a temporary restraining order enjoining Petitioner's imminent removal because the Government has allegedly failed to provide adequate safeguards to prevent Petitioner from committing suicide or engaging in other forms of self-harm. Doc. 16 at 19–22. As of October 31, 2026, Petitioner had not eaten for three days according to an ICE supervising officer. *Id.* at 22. Petitioner also expressed to ICE officers his desire to commit suicide and to otherwise harm himself while the Government had begun to effectuate his final order of removal. Doc. 16–6. Petitioner argues that the Government's failure to provide adequate safeguards to

protect Petitioner's health while effectuating his final order of removal is a violation of substantive due process. Doc. 16 at 19–22.

### 1. Jurisdiction Over Petitioner's Substantive Due Process Claims

The Court is persuaded that it has jurisdiction to review Petitioner's argument because it is directed at the legality of Petitioner's detention and not at the merits of his removal order. Petitioner alleges that Respondents are not providing adequate safeguards to ensure that Petitioner will not die in custody by suicide or otherwise harm himself while the government is effectuating Petitioner's order of removal. Doc. 16 at 19–22. Petitioner argues that this harm is increased if he is handed over to Pakistani authorities as the means of facilitating the final step in his removal. *Id.* Respondents challenge this Court's jurisdiction to hear this substantive due process claim on the grounds that it was not raised in the original habeas petition and Petitioner's subsequent transfer to El Paso would require a new petition to be brought in the United States District Court for the Western District of Texas. Doc. 17 at 5–6. Respondents' response does not address the merits of the substantive due process claim.

The Court is not persuaded by Respondents' argument that the Court lacks jurisdiction over Petitioner's substantive due process claim. At the emergency hearing, Petitioner's counsel stated that the last known location of Petitioner was in El Paso, Texas. Draft Tr. at 26:13–18. Respondents had no information to the contrary. *Id.* at 24:15–17. Petitioner's habeas petition names Mary De Anda-Ybarra in her official capacity as the Field Office Director of Enforcement and Removal Operations at the El Paso Field Office. Doc. 1 at 1. At the emergency hearing Respondents stated that Field Office Director De Anda-Ybarra had the power to produce Petitioner to the Court. Draft Tr. at 35:16–24. The Court therefore finds that it retains jurisdiction over Petitioner because Field Office Director De Anda-Ybarra is a named

party and Petitioner was detained in the District of New Mexico when he filed his habeas petition. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (holding that habeas petitions must be directed at the custodian of the petitioner and defining "custodian" as "the person with the ability to produce the prisoner's body before the habeas court."); *Ex parte Endo*, 323 U.S. 283, 307 (1944) (holding the "power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty . . . may be in no way impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court.").

In their response, Respondents assert that the substantive due process claim is not properly before the Court because Petitioner's Petition for Habeas Corpus did not include such an argument. Doc. 17 at 5–6. Petitioner replies that the habeas petition, Doc. 1, raises a substantive due process claim which challenges the legality of his detention, including its length, and the development of new factual circumstances relating to the legality of his detention are within the scope of original allegations. Doc. 18. During the emergency hearing, Respondents conceded that due to the habeas petition raising a general substantive due process claim and Petitioner's suicidality begining in the District of New Mexico, this Court could hear a temporary restraining order based on emergent but related factual circumstances. Draft Tr. at 36:19–37:6. The Court agrees and is persuaded that it has jurisdiction to address the merits of the Second TRO Motion.

The Court now addresses whether Petitioner has met his burden for a temporary restraining order.

**2. Irreparable harm**

Petitioner argues that he will suffer irreparable harm if the Government effectuates his order of removal without providing adequate safeguards against self-harm. In support of this

argument, Petitioner has provided an affidavit in which he explains the ongoing mental health crisis that he is experiencing. Doc. 16-6. Petitioner cites ICE's National Detention Standards and ICE's internal guidance require ICE to assess Petitioner's health, provide and manage medical and mental health care, and obtain assurances that if Petitioner is handed over to Pakistani authorities that they have "the medical capability to accept the noncitizen." Doc. 16 at 22–23. At the emergency hearing, Respondents were unable to state whether they had followed these standards with respect to Petitioner or speak to Petitioner's current mental health. Draft Tr. at 32:15–33:16–24.

Substantive due process "precludes the government from engaging in conduct that shocks the conscience or interferes with rights 'implicit in the concept of ordered liberty." *Ho v. Greene*, 204 F.3d 1045, 1058 (10th Cir. 2000), *overruled in part by Zadvydas v. Davis*, 533 U.S. 678 (2001). The Constitution imposes upon the government a duty to provide for the basic needs of someone in government custody. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). When the government fails to provide for these basic human needs "it transgresses the substantive limits on state action set by . . . the Due Process Clause." *Id.* at 200. Under a substantive due process analysis "it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the deprivation of liberty triggering the protections of the Due Process Clause." *Id.*

The Court is persuaded, based on the limited evidence before it, that effectuating the final order of removal without adequate safeguards in place, to guard against Petitioner from committing suicide, implicates substantive due process. Because Respondents are currently unable to offer assurances that Petitioner will have appropriate safeguards while he remains in

ICE custody during his removal, the Court concludes that Petitioner will suffer irreparable harm if removed before those safeguards are in place.

**3. Substantial likelihood he will prevail on the merits**

Similarly, the Court concludes that the absence of appropriate safeguards to guard against suicidality of Petitioner makes it substantially likely that petitioner will prevail on the merits. Respondents have provided no assurances that appropriate safeguards are in place, and it has not indicated that it is taking steps to ensure Petitioner can be safely removed. Based on the evidence before the Court, removal of Petitioner without adequate safeguards likely violates substantive due process. *DeShaney*, 489 U.S. 189, 200 (holding when the government fails to provide for basic human needs of those in its custody "it transgresses the substantive limits on state action set by . . . the Due Process Clause.").

**4. Public Interest**

Temporarily pausing the removal of Petitioner to ensure adequate safeguards against self-harm are in place before removal is in the public interest. While the Government has an interest in enforcing immigration laws, it must do so in a manner that respects the due process rights afforded to noncitizens. At the emergency hearing, the Government raised the argument that Petitioner's mental health crisis may be a form of obstructing his removal in the form of a hunger strike. Draft Tr. at 32:15–33:16–24. While the Court is not blind to this concern, neither party has presented any medical assessment of Petitioner's mental health, including medical records from Petitioner's detention. Without this assessment the Court must rely on Petitioner's affidavit and the representations of counsel about their communications with ICE officers. Based on the current evidence before the Court, the Court concludes that removing Petitioner under these conditions is not in the public interest. *See Free the Nipple-Fort Collins v. City of Fort Collins,*

*Co*, 916 F.3d 792, 807 (10th Cir. 2019) ("It is always in the public interest to prevent the violation of a party's constitutional rights.").

### *IV. Conclusion*

For the reasons stated above, Petitioner's Renewed Emergency Motion for Temporary Restraining Order, Doc. 16, is granted in part and denied in part as follows:

1. The Court denies Petitioner's request for a temporary restraining order as it relates to Petitioner's potential removal to Pakistan for lack of subject matter jurisdiction.

2. The Court grants Petitioner's request for a temporary restraining order as it relates to providing Petitioner with adequate safeguards from self-inflicted harm while effectuating his final order of removal.

3. Respondents are temporally enjoined from removing Petitioner from the United States for a period not to exceed 14 days.

4. Respondents are ordered to immediately transfer the Petitioner back to the District of New Mexico and to provide Petitioner with access to his counsel prior to his transfer.

5. Petitioner's oral motion to release petitioner within three days if he is unable to be safely transported back to New Mexico is denied. *See* Draft Tr. at 49:17–21.

6. This order was entered orally on November 2, 2026, at the emergency hearing. Draft Tr. at 48:6–49:6. The temporary restraining order will remain in effect, unless otherwise dissolved, until November 16, 2026, at 4pm Mountain Standard Time. Should Petitioner intend to seek relief beyond the 14-day period he must file a motion for a preliminary injunction prior to the expiration of this temporary restraining order.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.